Kim O. Dincel (SBN 131563)
Julie Bonnel-Rogers (SBN 176200)
Christopher Lai (SBN 249425)
**SILICON VALLEY LAW GROUP**
25 Metro Drive, Suite 600
San Jose, CA 95110
Phone: (408) 573-5700
Fax: (408) 573-5701
Email: kdincel@svlg.com, jrogers@svlg.com,
cgl@svlg.com

Attorneys for Defendants
TY LEVINE, KAREN LEVINE,
VALLEY CORP. B. and RONALD J. HAAS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG, a District of Columbia, Risk Retention Group,

Plaintiffs

vs.

VALLEY CORP. B., a California Corporation formerly known as R.J. HAAS CORP; RONALD J. HAAS, an individual; TY LEVINE, an individual; and KAREN LEVINE, an individual,

Defendants

**Case No. 5:10-CV-05533-EJD**

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Date: November 2, 2012
Time: 9:00 a.m.
Judge: Edward J. Davila
Courtroom: 1

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENTS OF FACTS ........ 2

A. The Construction of Work ........ 2

B. The Policy ........ 3

C. The Underlying Action – Haas' rotating Legal Representation ........ 3

D. Trial ........ 5

1. Judgment ........ 6

2. Statement of Decision ........ 6

E. Settlement Opportunities ........ 7

F. Proposed Stipulated Judgment ........ 8

G. ProBuilder's Knowledge of Possible Misrepresentation by Haas on Application ........ 8

III. ARGUMENT ........ 9

A. Under California Law ProBuilders Can Not Rescind the Policy ........ 10

1. ProBuilders Failed to Promptly Rescind the Policy as Mandated by California Civil Code Section 1691 ........ 10

2. Rescission is Barred by Laches ........ 11

a. Required Elements of Laches ........ 11

b. ProBuilders' Excessive Delay in Attempting to Rescind Policy ........ 11

3. Alleged Misrepresentations ........ 11

4. ProBuilders' Knowledge of Alleged Misrepresentations ........ 12

5. ProBuilders Breached its Duty to Investigate ........ 13

6. Haas and the Levine's were Prejudiced by ProBuilders' Delay ........ 14

B. ProBuilders' Attempt to Rescind is Barred by Public Policy ........ 15

C. ProBuilders' Insrance Application Inquiries Were Ambiguous ........ 16

D. The Judgment in the Underlying Action is Covered Under the Policy ................. 17

1. ProBuilders is Bound by the Trial Court's Findings of Fact ....................... 17

2. There is Coverage for Damage to Work of Others .................................... 18

3. Exclusions Do Not Preclude Coverage ..................................................... 19

a. Exclusions J(5) and J(6) Do Not Preclude Coverage ........................... 19

b. Exclusions "L", "M", and "N" Do Not Preclude Coverage ................. 20

4. Contractor's Special Conditions (CSC) Endorsement Does Not Preclude All Claims ..................................................................... 21

E. Defendants Can Recover the Full Amount of the Underlying Judgment .............. 21

1. ProBuilders Breached the Implied Covenant of Good Faith and Fair Dealing ......................................................................... 22

2. Under Recent 9th Circuit Decision, Insurers Have Duty to Effectuate Settlement Where Liability is Reasonably Clear ....................................... 23

3. The Levines Will Be Entitled to Recover Bad Faith Damages Under California Insurance Code 11580 .................................................... 24

IV. CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

**Authority:**

*Abbott v. City of Los Angeles*
50 Cal.2d 438 (1958) ..... 11

*Anderson v. Liberty Lobby Inc.*
91 L.Ed.2d 202 (1986) ..... 10

*Barrera v. State Farm Mut. Automobile Ins. Co.*
71 Cal.2d 659 (1969) ..... 13,15

*Buss v. Superior Court*
16 Cal.4th 35 (1997) ..... 21

*Calfarm Ins. Co. v. Krusiewicz*
131 Cal.App.4th 273 (2005) ..... 20

California Traditions, Inc. v. Claremont Liability Ins. Co.
197 Cal.App.4th 410 (2011) ..... 16

*Celotex v. Catrett*
91 L.Ed.2d 265 (1986) ..... 10

*Centillium Communications, Inc. v. Atlantic Mutual Ins. Co.*
528 F.Supp.2d 940 (N.D. Cal. 2007) ..... 20

*Ceresino v. Fire Ins. Exch.*
215 Cal.App.3d 814 820 (1989) ..... 18

*Clemmer v. Hartford Ins. Co.*
22 Cal.3d 865 (1979) ..... 18

*Cole v. Calaway*
140 Cal.App.2d 340 (1954) ..... 11

*Collett v. Ins. Co. of the West*
64 Cal.App.4th 338 (1998) ..... 18

*Conti v. Board of Civil Service Commissioners of the City of Los Angeles*
1 Cal.3d 351 (1969) ..... 11

*Foley v. Interactive Data Corp.*
47 Cal.3d 654 (1988) ..... 22

*Gill v. Rich*
128 Cal. App. 4th 1254 (2005) ..... 14

*Hand v. Farmers Ins. Exch.*
23 Cal.App.4th 1847 (1994) .......... 24

*Interinsurance Exch. of Auto. Club of So. Calif. v. Sup Ct.*
209 Cal.App.3d 177 (1989) .......... 18

*Johansen v. California State Auto. Assn. Inter-Ins. Bureau*
15 Cal. 3d 9 (1985) .......... 22,23

*Kransco v. American Empire Surplus Lines Ins. Co*
23 Cal.4th 390 (2000) .......... 22

*Merritt v. Reserve Ins. Co.*
34 Cal.App.3d 858, (1973) .......... 22

*Masson v. New Yorker Magazine, Inc.*
115 L.Ed.2d 447 (1992) .......... 10

*Mosier v. Southern Cal. Ins. Exch.*
63 Cal.App.4th 1022 (1998) .......... 14

*McCune v. F. Alioto Fish Co.*
597 F.2d 1244 (9th Cir. 1979) .......... 11

*Northern American Capacity Ins. Co. v. Claremont Liability Ins. Co.*
177 Cal.App.4th 272 (2011) .......... 21

*PPG Industries, Inc. v. Transamerica Ins. Co.*
20 Cal.4th 310 (1999) .......... 22

*Powerine Oil Co., Inc. v. Superior Court*
37 Cal.4th 377 (2005) .......... 16

*Pray ex. rel Pray v. Foremost Ins. Co.*
767 F.2d 1329 (9th Cir. 1985) .......... 24

*Prichard v. Liberty Mutual Ins. Co.*
84 Cal.App.4th 890 (2000) .......... 19

*Proulx & Co. v. Crest-Liners*
98 Cal.App.4th 182 (2002) .......... 19

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*
809 F.2d 626 (9th Cir. 1987) .......... 10

*Thompson v. Navigators Insurance*
2012 U.S. Dist. Lexis 60122 .......... 16

*Watts Industries, Inc. v. Zurich American Ins. Co.*
121 Cal.App.4th 1029 (2004) .......... 20

*Wells Fargo Bank v. Bank of America*
32 Cal. App. 4th 424 (1995) .......... 11

*Yan Fang Du v. Allstate Ins. Co.*
681 F.3d 1118 (9th Cir. 2012) .......... 23,24

**Statute:**

California Civil Code §1691 .......... 2,10
California Civil Code §1693 .......... 2,10
California Civil Code §3257 .......... 11

California Code of Civil Procedure §998 .......... 8

Fed.R.Civ.P. §56(c) .......... 9
Fed.R.Civ.P. §56(e) .......... 10

**Regulation:**

Insurance Code §790.03(h) .......... 23
Insurance Code §790.03(h)(5) .......... 23
Insurance Code §11580 ..........
Insurance Code §11580(b)(2) .......... 24

**Other Authority:**

CACI 2337 (2008) .......... 24

Defendants Ty Levine, Karen Levine, Valley Corp. B, and Ronald J. Haas hereby submit their Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment filed by Plaintiff ProBuilders Specialty Insurance Company, RRG' ("ProBuilders").

## I. INTRODUCTION

This is a coverage dispute between ProBuilders and its insured Valley Corp. B, formerly known as R.J. Haas Corp. ("Haas Corp."), arising out of a successful underlying construction defect action brought by Ty Levine and Karen Levine ("Levines") against Haas Corp. and Ronald J. Haas ("Haas").

In 2006, the Levines hired Haas Corp. to be their general contractor and to construct their family home. In doing so, the Levines overtly and undisputedly relied on the fact that Haas Corp. was insured.

Construction on the Levines' home contained serious defects. The Levines filed a construction defect action against Haas Corp. and Haas in 2007. From March 2008, through the time a judgment was obtained at trial in November 2010, ProBuilders provided an inadequate defense to Haas Corp. and Haas, a defense that ProBuilders is now trying to characterize as a "*courtesy*" defense. During the course of litigation, ProBuilders turned over the attorneys for its insured no less than five times while assigning its claim file to no fewer than five representatives. There was rarely a time when the same attorney and the same claim representative handled the matter for more than a few months. ProBuilders repeatedly refused to settle the matter within policy limits or even to allow its appointed defense counsel to attempt to negotiate a settlement on behalf of Haas. Finally, immediately prior to trial, ProBuilders also refused to authorize Haas' counsel to enter into a stipulated judgment for $1.3 million in damages thereby unnecessarily exposing Haas to personal liability. At trial, the Levines obtained a judgment against both Haas Corp. and Haas totaling approximately $1.9 million.

After entry of the judgment, ProBuilders refused to satisfy any portion of the judgment and instead filed this action for declaratory relief primarily seeking rescission of its policy. However, at no time during the entire underlying action did ProBuilders ever inform Defendants that it could or would or intended to rescind its policy at issue despite having actual knowledge since 2008 of the exact same facts that it is now relying on in its current motion.

The Levines, Haas Corp. and Haas maintain that ProBuilders' motion must be denied in its entirety because there are triable issues of material facts regarding:

(1) Whether any portion of the underlying judgment is covered by the commercial general liability ("CGL") policy issued by ProBuilders to R.J. Haas Corp., policy no. COM5010992, effective August 29, 2006 to August 29, 2007 (the "ProBuilders Policy" or "Policy")

(2) Whether ProBuilders is entitled to rescind the Policy.

(3) Whether particular portions, if any, of the underlying judgment are not covered by the Policy.

On the issue of coverage, ProBuilders' motion fails to mention key factual determinations made by the trial court in the underlying judgment, including construction damage caused by Haas' ***employees*** and that such damage falls squarely within the coverage provided by the policy at issue.

On the issue of rescission, ProBuilders conceals the nearly ***three year delay*** between the time ProBuilders received notice of its alleged grounds for rescission and the filing of this action. This delay gives rise to a question of fact regarding ProBuilders' failure to "**promptly**" rescind as required by California Civil Code ("CCC") §§1691 and 1693, and whether its claim is barred under the doctrine of laches as pled by both the Levines and Haas as affirmative defenses.

For the reasons set forth more fully below the Court should deny ProBuilders' motion in its entirety.

## II. STATEMENT OF FACTS

### A. The Construction Work

On or about October 27, 2005, the Levines hired R.J. Haas Corp. to perform construction work on their home located in Los Altos. (Levine Decl. ¶2) In retaining Haas Corp., the Levines were aware that Haas Corp. carried commercial general liability insurance and this directly factored into their decision to retain Haas Corp. (Levine Decl. ¶3)

Construction on the residence began in early 2006. The construction work included, *inter alia*, framing, drywall, stucco installation, roofing, plumbing, flooring, heating/cooling installation, concrete and fencing. (Levine Decl. ¶4) During construction, the Levines began to notice defective work. After attempting to resolve issues with Haas, the Levines hired their own expert, Pat Kelley of Les Kelley, Inc., to assess the work performed. Mr. Kelley identified substantial construction errors, omissions and defects. After failing to resolve issues, Haas abandoned the project in February 2007. The Levines were forced to hire another contractor, Scott Flegel, to continue and complete the construction on their home.

(Levine Decl. ¶5)

The entire construction process was a nightmare for the Levines. The Levines and Pat Kelley discovered additional damage to the home that was not detectable prior to Haas' abandonment. (Levine Decl. ¶6; "Lai Decl." ¶3, Exh. P, Kelley Depo. at 81:3-16) Unfortunately, even after the work on the home was "completed" by Flegel, the Levines discovered additional damage. (Levine Decl. ¶7) According to Pat Kelley, damage to the home is continuing to this day. Lai Decl. (Lai Decl. ¶3, Exh. P, Kelley Depo. at 84:2-4)

**B. <u>The Policy</u>**

The ProBuilders CGL Policy (Haas Decl. ¶7, Exh. J) provides coverage for property damage as follows:

> Section I – Coverages
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. INSURING AGREEMENT - INDEMNITY
>    a. We will pay those sums that an insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies . . .
>    b. This insurance applies to bodily injury or property damage only if:
>       (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory
>       (2) The bodily injury or property damage resulting from such occurrence first begins during the policy period

**C. <u>The Underlying Action – Haas' Rotating Legal Representation</u>**

On or about March 1, 2007, the Levines filed suit: *Ty Levine, et al v. R.J. Haas Corp*., et al, Santa Clara County Superior Court Case No. 1-07-CV081016. (Haas Decl. ¶2) At that time both Haas Corp. and Ronald J. Haas were represented by attorneys John Podesta and Dave Strong of Branson, Brinkop, et al, who tendered the defense of the suit to Lloyd's of London and ProBuilders. Lloyd's had issued Haas Corp. a CGL policy for the period August 29, 2005 to August 29 2006 and ProBuilders had issued a CGL policy covering the period August 29, 2006 to August 29, 2007. (Haas Decl. ¶3)

On September 28, 2007, Lloyd's accepted the defense of the case. (Haas Decl. ¶4) On November 13, 2007, at the request of Mr. Podesta, Lloyd's agreed to retain attorney Paul Minoletti of the law firm Greene, Chauvel, et al as *Cumis* counsel to represent Haas Corp. (Haas Decl. ¶5, Minoletti Decl. ¶12) The basis for appointing *Cumis* counsel was the conflict between Haas Corp. and Ronald Haas, as Ronald Haas was perceived to have an incentive to shift liability to the corporation and vice versa. (Haas Decl. ¶5, Exh. G.)

On February 25, 2008, Lloyd's withdrew its defense of Haas Corp. (Haas Decl. ¶6, Exh. 6) Via letter dated March 11, 2008, Mr. Podesta expressed outrage at Lloyd's withdrawal because Lloyd's reasons for withdrawal (lack of subcontractor certifications) were known by Lloyd's at the time of tender. (Haas Decl. ¶6, Exh. I) Lloyd's withdrawal letter was provided to ProBuilders. (Haas Decl. ¶ 17)

On March 7, 2008, ProBuilders retained Mr. Podesta and Mr. Strong's firm as counsel for Ronald Haas, and Mr. Minoletti as counsel for Haas Corp., agreeing to defend subject to a reservation of rights. (Haas Decl. ¶7, Minoletti Decl.¶5) This decision was made nearly 12 months after Haas Corp. tendered the claim to ProBuilders and 10 months after acknowledging receipt of the tender. (Haas Decl. ¶7) Once ProBuilders retained the Branson firm, Mr. Strong assumed the lead in defending Ronald Haas. (Haas Decl. ¶8, Minoletti Decl.¶6) Mr. Strong's hourly fee was more than what ProBuilders would agree to pay and Ronald Haas was asked to pay $40.00 per hour for each hour of work provided by Mr. Strong in addition to the amount paid by ProBuilders. (Haas Decl. ¶8, Minoletti Decl.¶7) From the time ProBuilders accepted the defense, ProBuilders determined there was good cause for *Cumis* counsel and agreed to continue to retain Mr. Minoletti as separate counsel for Haas Corp. (Minoletti Decl.¶11)

Mr. Strong continued to represent Haas individually and spoke with Mr. Minoletti about Haas' apparent failure to obtain certificates of insurance and additional insured endorsements from his subcontractors. (Minoletti Decl.¶17) During this time, Mr. Strong informed Mr. Minoletti that he was having difficulty getting his invoices paid by ProBuilders. At that time, Mr. Minoletti also was having similar difficulties getting his invoices paid. (Minoletti Decl.¶¶18-19) ProBuilders' payment process was slow and cumbersome and adversely affected the handling of the case by legal counsel. (Minoletti Decl.¶¶18-19)

In July 2008, Mr. Podesta and Mr. Strong substituted out as Ronald Haas' counsel because of an alleged conflict with their work as ProBuilders' counsel in other matters. (Haas Decl. ¶9) ProBuilders retained David Garthe and Jonathan Heck of Boornazian, Jensen, & Garthe to represent Ronald Haas. (Haas Decl. ¶9, Minoletti Decl.¶20) Mr. Minoletti continued representing Haas Corp. (Minoletti Decl.¶21) Mr. Minoletti spoke with Mr. Heck about Haas' apparent failure to obtain certificates of insurance and additional insured endorsements from his subcontractors. (Minoletti Decl.¶22) This fact was directly communicated to ProBuilders in or around July 2008. (Minoletti Decl.¶22)

On February 11, 2010, ProBuilders' coverage counsel, George Yaron, sent a letter to the Boornazian firm and Mr. Minoletti withdrawing *Cumis* counsel for Haas Corp. Mr. Yaron's position was that no conflict justifying *Cumis* counsel existed, which was contrary to the position that Lloyd's had taken on the issue, and to the position ProBuilders had previously taken. (See *supra*, pp. 3-4.)

Consequently, Mr. Minoletti was forced to substitute out as counsel for Haas Corp. and the Boornazian firm substituted in as counsel of record for both Haas Corp. and Ronald Haas. (Minoletti Decl.¶¶31, 32, 34)

Upon his departure from representation, Mr. Minoletti spoke with Mr. Heck about the need to file a motion for summary adjudication as to the personal liability on the part of Ronald Haas individually. (Minoletti Decl.¶33) No such motion was ever filed or authorized by ProBuilders. (Minoletti Decl.¶35) Further, Mr. Minoletti continued to have problems getting his invoices paid. (Minoletti Decl.¶¶24-26)

At the same time, a dispute arose between Boornazian and ProBuilders for nonpayment of legal fees. ProBuilders had refused to pay the Boornazian firm for its work on the Haas matter ***for more than a year***. (Minoletti Decl.¶23). In July 2010, the Boornazian firm filed a motion to withdraw as counsel due to ProBuilders' refusal to pay for their legal services. (Minoletti Decl.¶38) ProBuilders initially opposed the motion, but the Boornazian firm was eventually permitted to withdraw. (Dincel Decl. ¶3)

Thereafter, coverage counsel for ProBuilders Mr. Yaron , retained Paul Minoletti to re-enter the case as counsel for both Haas Corp. and Ronald Haas. Trial was set to commence in two months, and the depositions of both plaintiffs, plaintiffs' expert, and all of plaintiffs' percipient witnesses had not been taken. (Minoletti Decl.¶¶37,40) During trial preparation, Mr. Minoletti was forced to deal with at least 5 different ProBuilders claims representatives as well as unreasonably burdensome reporting requirements. Mr. Minoletti continued to have problems getting paid by ProBuilders. (Minoletti Decl.¶¶18-19)

**D. <u>Trial</u>**

Trial commenced on November 1, 2010. At trial, Plaintiffs' expert, Pat Kelley, testified regarding the damages to the Levines' home. (Dincel Decl. ¶4) Mr. Kelley had been retained by the Levines prior to February 2007, while Haas was still on the Levine job, and he also continued to inspect the site after Haas had left the job. (Lai Decl. ¶3, Exh. H, Kelley Depo. at 81:7-9) Mr. Kelley presented a spreadsheet of damages that separated out numerous damage categories, including $295,115.45 of damage to the work of others caused by the work of Haas' own employees. (Dincel Decl. ¶4; Lai Decl. Kelley Depo. Exh. 35) Haas' expert witness, Joseph Hutka, testified that he was in complete agreement with Pat Kelley's opinions. (Dincel Decl ¶5; Minoletti Decl. ¶49) Pat Kelley testified later that he had never, in his entire 30 year career, seen a situation where an opposing expert completely agreed with his opinions. (Lai Decl. ¶3, Exh. H, Kelley Depo. at 87:12-89:8)

A number of witnesses, including Ronald Haas, project foreman Tucker Langlois, and Haas office employee Susan Lambre, testified as to the employment status of the framers that had worked on the Levines' home. (Dincel Decl. ¶6) These witnesses had never been deposed, and their testimony was

damning to Haas Corp. and Haas' defense regarding the employment status of the framers. (Dincel Decl. ¶6)

At trial, ProBuilders sent a coverage attorney from Mr. Yaron's firm, Shawn Bananzadeh, to trial every day to monitor the proceedings. Mr. Minoletti was also required to send daily trial status reports via e-mail to ProBuilders during trial. ProBuilders knew that trial was not proceeding well for Ronald Haas and R.J. Haas Corp. ProBuilders also knew that R.J. Haas Corp's expert Joseph Hutka agreed with everything that Plaintiff's expert Pat Kelley testified to, including his damage analysis. (Minoletti Decl. ¶¶44-47)

**1. Judgment**

After a 2 week bench trial, the trial Court entered a judgment in favor of the Levines on November 30, 2010. A critical finding of fact by the Court was that the framers that performed much of the defective and damaging work on the Levines' home were employees of Haas Corp. (i.e. not independent contractors or statutory employees). (Dincel Decl. ¶7, Exh.Q; See concurrently filed Request for Judicial Notice, Exh. Q). The judgment awarded the following damages to the Levines:

- $533,239.21 in total construction, repair costs, additional engineering and architect costs, and additional costs of completion;
- $150,451.19 in consequential damages incurred by the LEVINES as a result of being displaced from their home for an additional year after the agreed to-completion date set forth in the construction contract;
- $197,955.93 prejudgment interest on construction damages, Westfall Engineering Costs and Flury Bryant Costs at 10% per annum the date of filing of the Complaint (March 1, 2007) to November 15, 2010;
- $22,077.45 prejudgment interest on costs of alternate housing, rental insurance, moving expenses, PODS , storage, Public Storage, and PG&E transfer costs from the date the LEVINES return to their home (October 27, 2007) to November 15, 2010;
- $12,500.00 contractor's bond; and,
- $554,635 disgorgement of payments made to R.J. HAAS CORP. by the LEVINES. (Request for Judicial Notice, Exh. Q.)

**2. Statement of Decision**

On January 13, 2011, the Court issued a Statement of Decision, setting forth that the award of $533,239.21 in total construction, repair costs, additional engineering and architect costs, and additional costs of completion was comprised of three categories (Dincel Decl. ¶8, Exh. R; see concurrently filed

Request for Judicial Notice, Exh. R):

- $112,702.26 in Damage for Substandard Work
- $295,115.45 in Damage to Other Work Caused by the Defective Work
- $125,421.50 in Completion Costs

The Statement of Decision also included a finding on the employment status of the workers involved in the Levine project as follows:

> There was evidence showing that the framers of the subject project were <u>not</u> statutory employees. There was evidence showing that the framers on the subject project were <u>not</u> independent contractors. There was sufficient evidence to show that the framers were the employees of R.J. Haas Corp. (Request for Judicial Notice, Exh. R, p. 3:13-17)

After trial Mr. Minoletti was again forced to spend an untenable amount of time and effort seeking payment from ProBuilders for his trial work. (Minoletti Decl. ¶¶51-52)

To date, ProBuilders has refused to satisfy any portion of the judgment. (Dincel Decl. ¶9)

**E. <u>Settlement Opportunities</u>**

At no time did ProBuilders ever make a good faith attempt to settle the underlying action within policy limits. On ***three occasions***, Plaintiffs made settlement offers within policy limits.

On or about January 2008, the Levines made a settlement demand of approximately $300,000. (Levine Decl. ¶8; Minoletti Decl. ¶13) This was an reasonable settlement offer given the high exposure in this case due to the extent of the defects involved and the high-end nature of the residential dwelling. (Minoletti Decl. ¶13-14). ProBuilders was made aware that Plaintiffs' expert Mr. Pat Kelley was a highly regarded construction defect expert, that he had been retained early, and that he would assuredly provide substantive testimony about damages his ability to inspect the construction site before repairs were accomplished. (Minoletti Decl. ¶15). ProBuilders was notified of the $300,000 settlement offer and rejected the same with no counter offer of any kind. (Haas Decl.¶¶10-11)

On May 22, 2009, the Levines made a settlement offer of $860,224.89. (Haas Decl. ¶12, Exh. K) Mr. Heck conveyed this offer to ProBuilders in an e-mail dated June 2, 2009. (Haas Decl. ¶13, Exh. L ) Mr. Heck recommended that ProBuilders settle the matter, conveying his opinion that the Levines were likely to prevail on their claims. Again ProBuilders rejected this settlement offer, provided no counter offer and refused authority to attempt to negotiate a settlement. (Minoletti Decl. ¶27-29)

On or about July 27, 2009, the Levines offered to settle the case for $1.3 million. (Haas Decl. ¶14). Mr. Heck conveyed this offer to ProBuilders in an e-mail dated July 27, 2009, requesting authority to settle and advising that settlement for less than this demand was possible. (Haas Decl. ¶14, Exh. N)

Again ProBuilders rejected this settlement offer and refused authority to negotiate a settlement.

On or about February 9, 2010, the Levines offered to settle the underlying action for $985,000. This offer was set forth pursuant to California Code of Civil Procedure (CCP) 998. (Dincel. Decl. ¶10) Again, Mr. Heck conveyed this offer to ProBuilders with a recommendation that because the Plaintiffs would likely prevail at trial, he be given authority to engage in settlement negotiations. Instead, via letter to Ronald Haas on February 19, 2010, ProBuilders refused to offer any money towards a settlement and refused to authorize Mr. Heck to even attempt to negotiate a settlement. (Minoletti Decl. ¶29)

In October 2010, the parties and their counsel attended a mandatory settlement conference with Special Master William Pagano. Not only did ProBuilders not send a representative to this conference as mandated, its own claims representative was unreachable by phone, causing the special master to critically comment on ProBuilders' lack of professionalism. (Haas Decl. ¶15)

Haas' counsel continued to recommend that ProBuilders settle or at least attempt to settle the matter. (Minoletti Decl. ¶41) In January 2010, Mr. Minoletti recommended to ProBuilders that settlement be discussed and that it was a certainty that a verdict would be entered in favor of the Levines. Mr. Minoletti felt that ProBuilders unreasonably failed to attempt to settle this case within policy limits to the detriment of R.J. Haas Corp and Ronald Haas. (Minoletti Decl. ¶30)

**F. <u>Proposed Stipulated Judgment</u>**

On November 1, 2010, the Levines' counsel sent Mr. Minoletti a proposed stipulated judgment under which the Levines would take a judgment totaling $1,320,743.19 against Haas Corp. with the agreement that the judgment would not be entered against Ronald Haas individually. (Minoletti Decl. ¶42) At the time that Mr. Minoletti re-entered the case upon Boornazian's withdrawal just two months before trial, it was his understanding that ProBuilders was amenable to a stipulated judgment in lieu of trial. (Minoletti Decl. ¶39) Accordingly, Mr. Minoletti initially approved the proposed stipulated judgment and recommended it to Ronald Haas, who also agreed to it. (Minoletti Decl. ¶42, Haas Decl. ¶16) ProBuilders then reversed itself and refused to allow Haas to enter into the stipulated judgment. (Minoletti Decl. ¶43) After trial, the Court entered a judgment against both Haas Corp. and Ronald Haas individually for approximately $1.9 million. (Dincel Decl. ¶6, Exh. Q; Request for Judicial Notice, Exh. Q)

**G. <u>ProBuilders' Knowledge of Possible Misrepresentations by Haas on Application</u>**

On February 25, 2008, Lloyd's sent a letter to Haas withdrawing its defense of Haas Corp. and Haas based on concerns of Haas' failure to obtain certificates of insurance and additional insured endorsements from the subcontractors on the Levine job. This letter was provided to ProBuilders by

Haas' counsel. (Haas Decl. ¶17).

On July 28, 2008, Mr. Podesta sent ProBuilders a status report that stated that Haas was unable to locate certificates of insurance and additional insured endorsements for all subcontractors on the Levine job. (Minoletti Decl. ¶8, Exh. B )

On October 5, 2009, ProBuilders sent a letter to Haas *confirming* its own understanding that Haas had not obtained certificates of insurance, additional insured endorsements, indemnity agreements and/or hold harmless agreements from its subcontractors on the Levine job. ProBuilders also noted that this requirement was the subject of questions on the insurance application. Regardless, ProBuilders did not rescind the policy nor indicate or notify Haas or his counsel that the Policy could or would be rescinded. (Haas Decl. ¶18; Minoletti Decl. ¶9, Exh. C)

On February 11, 2010, ProBuilders' coverage counsel, Mr. Yaron, sent a letter to Mr. Heck and Mr. Minoletti stating that it was "undisputed" that Haas Corp. had not complied with the terms of the Contractors Special Conditions ("CSC") Endorsement, namely, that Haas had not obtained certificates of insurance, additional insured endorsements, indemnity agreements and/or hold harmless agreements from its subcontractors on the Levine job. (Minoletti Decl. ¶¶31,36, Exh. F) Again, ProBuilders did not rescind the policy nor indicate or notify Haas or his counsel that the Policy could or would be rescinded.

On February 19, 2010, ProBuilders sent a letter to Mr. Haas citing to its belief that Haas had not obtained certificates of insurance, additional insured endorsements, indemnity agreements and/or hold harmless agreements from its subcontractors on the Levine job. ProBuilders again noted that this requirement was the subject of questions on the insurance application, inferring that Haas had made misrepresentations about these items on his insurance application. However, once again, ProBuilders did not rescind the policy nor indicate or notify Hass or his counsel that the Policy could or would be rescinded in this letter. (Haas. Decl. ¶19, Minoletti Decl. ¶29, Exh. E)

ProBuilders never attempted to audit the policy, charge more premiums, or return the premiums that had been paid to date. ProBuilders never informed the insured of any intention to rescind the policy nor actually attempt to rescind the policy prior to the filing of this action on December 27, 2010. A time period spanning nearly ***three years*** after ProBuilders first learned of the exact same facts that it is now relying in its effort to rescind the policy in its current motion. (Haas Decl. ¶21, Minoletti Decl. ¶10)

## III. <u>ARGUMENT</u>

Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate, as it is here. *See Anderson*, 477 U.S. at 248.

## A. Under California Law ProBuilders Can Not Rescind the Policy

### 1. ProBuilders Failed to Promptly Rescind the Policy as Mandated by California Civil Code Section 1691

An insurer doing business in the state of California must **promptly** act to rescind a policy under Civil Code §1691 which provides:

> Subject to Section 1693, (which sets forth the prejudice element of laches) to effect a rescission a party to the contract **must**, **promptly** upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
>
> (a) Give notice of rescission to the party as to whom he rescinds; and
>
> (b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so. (Emphasis added)

California Civil Code §§1691 and 1693 were drafted to prevent exactly what ProBuilders is attempting to do here. ProBuilders cannot possibly claim or argue that it acted **promptly** to rescind the policy at issue. Nor can it establish through any evidence that it has submitted in support of its motion that Haas or his counsel were ever given notice of rescission other than the filing of the current complaint on December 27, 2011. Finally, ProBuilders never attempted at any time to refund the premiums paid on the policy.

**2. Rescission is Barred by Laches**

ProBuilders received notice of its basis for rescission nearly three years prior to the filing of this action. ProBuilders cannot rescind the Policy because its rescission claim is not timely. Laches is an unreasonable delay in asserting an equitable right that causes prejudice to an adverse party, such as to render the granting of relief inequitable. *Wells Fargo Bank v. Bank of America*, 32 Cal. App. 4th 424, 439 (1995). The doctrine derives from the principle that "the law helps the vigilant before those who sleep on their rights." Civ. Code § 3527. Accordingly, laches can be a complete defense to claims of indemnity, contribution and subrogation. *McCune v. F. Alioto Fish Co.*, 597 F.2d 1244 (9th Cir. 1979) (applying California law) (indemnity and contribution)

**a. Required Elements of Laches**

The equitable doctrine of laches is an affirmative defense plead by both the Levines and the Haas defendants which requires the fulfillment of two elements. First, there must be an unreasonable delay on the part of the plaintiff in asserting its claim. Second, the defendant must have been prejudiced as a result of the delay. Civil Code §1691-1693; *Conti v. Board of Civil Service Commissioners of the City of Los Angeles*, 1 Cal.3d 351 (1969); *Abbott v. City of Los Angeles*, 50 Cal.2d 438 (1958).

**b. ProBuilders' Excessive Delay in Attempting to Rescind Policy**

In *Cole v. Calaway*, 140 Cal.App.2d 340 (1954), the Court of Appeal applied the doctrine of laches to an insurance contract where a medical malpractice insurer sought to rescind its policy five months after allegedly receiving notice of a false insurance application. The insured claimed that rescission was barred by laches. The court held that on the issue of laches, "**the main question is whether the time elapsing between the date of discovery and the time of rescission was unreasonable under the circumstances**" and that "**the question of laches is one for the determination of the trial court**." *Id.* at 347. (Emphasis Added)

In *Cole*, the delay between the insurer's receipt of notice of a misrepresentations and the rescission action was only five months. In this case, the delay was nearly three years. Regardless of the merits of plaintiffs and defendants' arguments on this issue, the question of laches is one for the determination of the trial court and where the issue is disputed, it cannot be resolved in a dispositve motion as a matter of law.

**3. Alleged Misrepresentations**

As noted above, ProBuilders filed this action on December 27, 2010, seeking, for the **first time**, to rescind the policy based on alleged misrepresentations made by Haas in the Policy application. These alleged misrepresentations included answers to the following questions:

- Are subcontractors allowed to work without providing applicant with a certificate of insurance? - No
- Does applicant allow any subcontractors to maintain coverage with more restrictive coverage than the applicant's? - No
- Does or will applicant have a written contract with its subcontractors that includes a hold harmless agreement relative to work performed by the subcontractor? - Yes
- Is applicant named as additional insured on its subcontractors' insurance policies? – Yes
- Does applicant carry workers' compensation for all employees? – Yes

ProBuilders also alleged that Haas made a misrepresentation in not listing the Levine job as one of the "three largest projects that are in progress or will be completed during the proposed policy period."

**4. ProBuilders' Knowledge of Alleged Misrepresentations**

At the time of tender of the underlying Complaint in March 2007, ProBuilders was on put on notice of the Levine project because it was the subject of the underlying lawsuit. Regardless of the specific allegations set forth in the Levine Complaint, ProBuilders never sought to audit the Policy or investigate any of the information set forth by Haas in his insurance application form. Or if they had, ProBuilders' chose not to rescind the policy.

On February 25, 2008, Lloyd's sent a letter to Haas withdrawing its defense based on concerns related to Haas' failure to obtain certificates of insurance and additional insured endorsements from the subcontractors on the Levine job. This letter was provided to ProBuilders and triggered ProBuilders duty to investigate. This was nearly **3 years** before ProBuilders' attempted rescission. Regardless of their actual knowledge, ProBuilders did not rescind the policy or give notice of any intention to rescind the policy.

On July 28, 2008, Haas' counsel sent a status report to ProBuilders stating that Haas Corp. "was unable to locate additional insured endorsements for all subcontractors except West Coast Plastering." This inability to locate these additional insured endorsements was an indication that Haas' "Yes" answer to the application question "Is applicant named as additional insured on its subcontractors' insurance policies?" may have been a misrepresentation and triggered ProBuilders duty to investigate. This was approximately **2.5 years** before ProBuilders' attempted rescission. Again, despite their actual knowledge, ProBuilders did not rescind the policy or give notice of any intention to rescind the policy.

On October 5, 2009, ProBuilders Haas sent a letter to Haas stating its own understanding that Haas had not obtained certificates of insurance, additional insured endorsements, indemnity agreements and/or hold harmless agreements from its subcontractors on the Levine job. ProBuilders also noted that

this requirement was the subject of questions on the insurance application, inferring that Haas had made misrepresentations about these items on his insurance application. ProBuilders clearly had a duty to investigate and failed to do so. This was over **2 years** before ProBuilders' attempted rescission. Again despite their confirmation that Haas had not obtained the requested documentation , ProBuilders did not rescind the policy or give notice of any intention to rescind the policy.

On February 11, 2010, ProBuilders' coverage counsel, George Yaron, sent a letter to Mr. Heck and Mr. Minoletti stating that it was "undisputed" that Haas Corp. had not complied with the terms of the CSC Endorsement. Namely, that Haas had not obtained certificates of insurance, additional insured endorsements, indemnity agreements and/or hold harmless agreements from its subcontractors on the Levine job. This was **9 months** before ProBuilders' attempted rescission. Again, ProBuilders did not rescind the policy or give notice of any intention to rescind the policy.

On February 19, 2010, ProBuilders sent a letter to Mr. Haas also citing to its belief that Haas had not obtained certificates of insurance, additional insured endorsements, indemnity agreements and/or hold harmless agreements from its subcontractors on the Levine job. ProBuilders also noted again that this requirement was the subject of questions on the insurance application, inferring that Haas had made misrepresentations about these items on his insurance application. Yet once again, ProBuilders did not rescind the policy or give notice of any intention to rescind the policy.

All of these letters establish that ProBuilders had ***<u>years</u>*** of actual knowledge of Haas' potential misrepresentations or were admissions that ProBuilders was on notice of Haas' potential misrepresentations in his insurance application form.

**5. <u>ProBuilders Breached its Duty to Investigate</u>**

ProBuilders' did not satisfy its duty to investigate Haas' alleged misrepresentations when it first became aware of them nearly 3 years before the filing of this action. For an insurance company claiming rescission based on misrepresentation, "the means of knowledge is equivalent to knowledge, and that a party who has the opportunity of knowing the facts constituting the fraud of which he complains cannot be supine and inactive, and afterwards allege a want of knowledge that arose by reason of his own laches or negligence." *Barrera v. State Farm Mut. Automobile Ins. Co*. 71 Cal.2d 659, 669 (1969). The law should not encourage an insurance company's policy of soliciting and accepting an application for insurance, receiving and retaining the premium payment and then issuing a policy but reserving the right to rescind because of a misrepresentation that it had every means to investigate. *Id*. at 673.

ProBuilders had actual knowledge of the potential misrepresentations dating back to March 2007. The substance of the subcontractors' declarations attached to ProBuilders' motion for summary

judgment, while easily discoverable by ProBuilders back in July 2008, was actually already known by ProBuilders in 2008. At that time, the Levine job was evident, Haas' work on the job was evident, and the identities of the subcontractors were known. If ProBuilders had any concern regarding its insured, it was ProBuilders' duty to investigate the insured at the time it first received notice of potential misrepresentations.

**6. <u>Haas and the Levines were Prejudiced by ProBuilders' Delay</u>**

ProBuilders' delay in investigating and promptly rescinding the Policy prejudiced both Haas and the Levines. "When the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his other remedies." *Gill v. Rich*, 128 Cal. App. 4th 1254, 1265 (2005).

ProBuilders failure to diligently investigate Haas' alleged misrepresentation and failure to give notice of rescission resulted in prejudice to the Levines and the Haas defendants. Haas endured years of litigation during which ProBuilders provided what they retrospectively coined as a "courtesy defense" under the guise of coverage.[1] By failing to give timely notice of rescission, ProBuilders induced Haas to rely on its defense which was hindered by ProBuilders' continuous reassignment of the claims file to new representatives, nonpayment of legal fees, refusal to authorize settlement within policy limits, withdrawal of *Cumis* counsel and refusal to allow counsel to properly prepare for trial. During the underlying action, the Haas defendants and the Levines were led to believe that coverage would apply to whatever judgment was rendered by the court. Ultimately, the trial court entered a judgment against both Haas Corp. and Haas personally for approximately $1.9 million.

Haas was **never** put on notice that ProBuilders would move to rescind the Policy, as it is attempting to do now. Without notice of rescission, Haas allowed the defense to proceed. In the course of his defense, Haas paid money out of his own pocket to fund his defense, supplementing ProBuilders' low hourly rate for its retained defense counsel. He relied on ProBuilders' repeated refusals to settle the case for an amount that paled in comparison with the amount of the judgment obtained at trial. If he had known of the possibility that coverage would be rescinded, his litigation/settlement strategy would have been significantly different, and he would have limited his personal liability.

The Levines also suffered prejudice as a result of ProBuilders' unreasonable delay. From the time that they were deciding on what contractor to hire in 2006, the Levines relied on the fact that Haas

---

[1] ProBuilders' continued description of its defense of Haas Corp. and Haas as a "courtesy defense" is incorrect. A "courtesy defense" is one that is provided by an insurer to a ***non-insured*** with an agreement that the insurer has no duty to indemnify. *Mosier v. Southern Cal. Ins. Exch.* 63 Cal.App.4th 1022, 1029 (1998). Here, ProBuilders had a duty to indemnify and defend Haas Corp. and Haas, who were direct first-party insureds.

Corp. was insured. It was a specific requirement imposed by the Levines during their consideration of general contractor applicants. They chose Haas Corp. to do the work in reliance on his insured status. ProBuilders issued certificates of insurance that Haas provided to the Levines to verify his insured status to them. Once they filed suit, they had no indication that ProBuilders, which was providing a defense to Haas Corp. and Haas, would seek rescission. They personally funded their litigation in the underlying action, with their legal fees exceeding $400,000. They obtained a judgment with the expectation that it would be covered by Haas' insurer. The Levines participated in the underlying case with the express and implied belief that coverage of some amount would apply. ProBuilders unjustifiably withheld its intent to seek rescission of the policy ***for years*** to the detriment the Levines. Had the Levines understood that coverage would NOT apply, they would have handled the underlying case, settlement negotiations and offers to compromise in a different manner. The entire litigation process and ProBuilders' refusal to satisfy any portion of the Levines' judgment has not only caused the Levines incredible financial damage, it has caused their entire family an indescribable amount of emotional pain.

**B. <u>ProBuilders' Attempt to Rescind is Barred by Public Policy</u>**

Granting ProBuilders' request for rescission would violate the public policy that protects third-party creditors from insurers that delay a rescission action until after a third-party judgment is entered against an insured.

*Barrera v. State Farm Mutual Automobile Insurance Co.*, *supra*, 71 Cal. 2d 659 (1969) involved a situation identical to this coverage action. There, an insured misrepresented on a State Farm auto insurance application that no members of his household had had their driver's license suspended in the prior five years. In fact, the insured's license had been suspended once in the prior five years. However, State Farm did not check the veracity of his application answers and issued a policy. The insured paid premiums on the policy. Later, the insured's wife, also insured on the policy, struck a pedestrian with her vehicle. The pedestrian's attorneys notified State Farm of plaintiff's claim. State Farm rescinded the insurance policy for misrepresentation on the application and refunded all premiums. The pedestrian sued the insureds and obtained a judgment against them. *Id*. at 664.

The Court held that even though the insured had made a misrepresentation on the policy application form, State Farm was not allowed to simply rescind the policy based on that misrepresentation. *Id*. at 663, 681. The Court held that an insurer owes a duty that "directly inures to the benefit of third persons injured by the insured", recognizing that an auto insurer that does not ***timely investigate*** a basis for rescission "produces the dangerous condition that owners of cars will be driving on the streets and highways in the erroneous belief that they are insured." The Court reasoned that, given

this erroneous belief, the insured would act as if he were insured and the general public would have no reason to suspect otherwise, and in fact, would rely on the insured's honest belief. *Id*. at 672. Such a situation would be to the public's detriment. Consequently, the Court held that there were issues of fact as to whether State Farm made a reasonable investigation of misrepresentations within a reasonable time. *Id*. at 682.

While *Barrera* involved an automobile driver insured, the same rationale applies here to Haas as a general contractor. As a general contractor, Haas serves the public. There is a significant public interest in protecting customers of general contractors who present themselves as insured to third party customers. The Levines selected Haas as their contractor with the verification from ProBuilders that Haas was insured, and Haas had no basis for believing that his policy would be rescinded. Here, the Levines had no basis for expecting that Haas' policy would be rescinded because ProBuilders did not seek to rescind ***until after judgment*** was entered in the underlying action. Just as State Farm owed a duty to the pedestrian in *Barrera*, ProBuilders owes a duty to the Levines. ProBuilders breached this duty to the Levines with their delay and post-judgment attempt to rescind the policy.[2]

## C. ProBuilders' Insurance Application Inquiries Were Ambiguous[3]

Courts can decide questions of insurance coverage based on the terms of the policy unless the terms are capable of two or more reasonable constructions. *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390, 33 Cal. Rptr. 3d 562, 118 P.3d 589 (2005). A party's expectation of coverage cannot create an ambiguity, but does become relevant if the court finds that an ambiguity exists. *California Traditions, Inc. v. Claremont Liability Ins. Co.* (2011) 197 Cal.App.4th 410, 420-421, 127 Cal. Rptr. 3d 451. If a term is ambiguous, it is usually construed ***against*** the insurer. *Powerine*, 37 Cal. 4th at 391.

In this matter, ProBuilders contends that Haas made material misrepresentations in his insurance application. However, Haas' answer were responses to ambiguously worded inquiries:

- Are subcontractors allowed to work without providing applicant with a certificate of insurance? - No

---

[2] The *Barrera* Court recognized the logical basis for imposing this public policy-based duty on insurers. If insurers were allowed to delay rescission until after a potential loss occurred, every insurer would do so. They could retain the premium and take the chance of a loss, and, if none occurred, retain the premium. Or, if a loss occurred, the insurer could belatedly rescind the contract. *Id*. at 674. The insurer would always win and third party victims relying on the insurance would always lose. Allowing ProBuilders' delayed post-judgment rescission would be unfairly rewarding them for their delay, which is what the *Barrera* Court was explicitly intending to avoid.

[3] Please see Defendants' submission of supporting but unpublished authorities submitted herewith: *Thompson v. Navigators Insurance* 2012 U.S. Dist. Lexis 60122 (S.D. Cal. Apr. 30, 2012.)

- Does applicant allow any subcontractors to maintain coverage with more restrictive coverage than the applicant's? - No
- Does or will applicant have a written contract with its subcontractors that includes a hold harmless agreement relative to work performed by the subcontractor? - Yes
- Is applicant named as additional insured on its subcontractors' insurance policies? – Yes
- Does applicant carry workers' compensation for all employees? – Yes

At the time Haas responded to these inquiries, R.J. Haas Corp. had an existing insurance policy with Lloyds and believed the Lloyd's policy applied to the Levine project. Haas interpreted the questions in the ProBuilders' application to apply to work going forward. The questions did not have a time element to them nor did they indicate that the answers pertained to Haas' practices on jobs commenced prior to the application.

The Levine job was already an ongoing job in progress at the time that Haas completed the application; that is why Haas did not list the Levine project under the ProBuilders' application for which he was applying. Haas did not consider his answers to the questions to apply retroactively to the Levine job, since it had already begun prior to the time of the application. (Haas Decl. ¶20) Without clarification as to the time element to which the inquiries sought responses, Haas' interpretation of the ambiguous questions, and his responses thereto, were reasonable. This ambiguity must be construed against ProBuilders in accordance with California law.

**D. The Judgment in the Underlying Action is Covered Under the Policy**

In its motion for summary judgment, ProBuilders makes arguments that because portions of the underlying judgment are not covered, then no part of the judgment could be covered. ProBuilders' analysis glosses over specific portions of the Judgment and Statement of Decision that demonstrate coverage, particularly the portion of the Statement of Decision finding that the framers on the Levine job were Haas Corp.'s **actual** employees and that nearly $300,000 of the damage award was allocated to a clearly covered category - Damage to Other Work Caused by the Defective Work.

**1. ProBuilders is Bound by the Trial Court's Findings of Fact**

ProBuilders incorrectly contends that the framer on the Levine job was a subcontractor of Haas Corp. However, the employment status of the framers, which affects the coverage analysis in this action, has already been litigated in the underlying action.[4] The trial court entered a Statement of Decision specifically finding that the framers were actual employees (i.e. not a subcontractor) of Haas Corp.

[4] See Defendants' Separate Evidentiary Objection filed concurrently herewith.

In a new action on a different cause of action, a former judgment is conclusive on issues litigated in the former action. *Interinsurance Exch. of Auto. Club of So. Calif. v. Sup Ct.* 209 Cal.App.3d 177, 183 (1989). Collateral estoppel has three elements: (1) A final judgment on the merits in the first action, (2) identity or privity among parties in the first action and those against whom estoppel is asserted in the second action, and (3) identity of the issue presented in the second action with one necessarily decided (actually adjudicated) in the first action. *Ceresino v. Fire Ins. Exch.* 215 Cal.App.3d 814, 820 (1989). All three elements are present here.

First, there was a final judgment on the merits in the Underlying Action. A number of witnesses, including Ronald Haas, his former foreman Tucker Langlois, and his former office employee Susan Lambre, testified as to the employment status of the framers that had worked on the Levines' home. The trial court specifically rejected all arguments to the contrary and found that the framers were in fact actual employees of Haas Corp. in its final judgment on the merits.

Second, there is privity here between ProBuilders and Haas. Privity requires that the party to be estopped must have had an identity or community of interest with and an adequate representation by, the losing party in the first action. In addition, the circumstances must be such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. *Clemmer v. Hartford Ins. Co.* 22 Cal.3d 865, 875 (1979). This element was satisfied because ProBuilders funded the defense, because it received numerous status reports from Haas' numerous defense counsel throughout the case, because Haas' trial counsel sent ProBuilders daily trial reports, and because ProBuilders had its own coverage counsel attend each day of trial.

Third, the issue of the framers' employment classification is the same in this action as it was in the underlying action. Statements made by Ronald Haas in deposition in this action mirror the evidence presented at trial in the underlying action. The trial court adjudicated this issue, finding that the framers on the Levine job were Haas Corp.'s employee. Each element of collateral estoppel exists here, and ProBuilders is bound by the trial court's judgment as to this issue.

**2. <u>There is Coverage for Damage to Work of Others</u>**

Contrary to ProBuilders assertions, it has a duty to indemnify Haas Corp. and Haas for at least certain portions of the judgment in the underlying action.

As ProBuilders admits in its own motion at page 15, line 21-25, coverage applies to "resulting property damage" caused by the defective work of the insured. *Collett v. Ins. Co. of the West*, 64 Cal.App.4th 338, 343-344 (1998). "To be covered under a commercial general liability (CGL) policy, such as the policy in this case, the property damage must be to tangible property other than the insured's

own work, caused by the insured's defective work." *Proulx & Co. v. Crest-Liners*, 98 Cal.App.4th 182, 196 (2002). There is coverage for damage to the work of others caused by the defective work of Haas.

At trial, the Levines' expert, Pat Kelley, provided a spreadsheet that set forth various categories of damages to the home. Mr. Kelley also testified, as his spreadsheet indicated, that the framing work was defective and caused damage to work that was installed or constructed by other individuals not employed by Haas. (Lai Decl. ¶3, Exh. P, Kelley Depo. at 81:3-16) The trial court awarded the Levines with $295,115.45 for "Damage to Other Work Caused by the Defective Work." Because the framers were the actual employees of Haas, their work was Haas' "work", and because this work damaged the work of others, such damage is covered under the Policy by ProBuilders' own admission.

**3. Exclusions Do Not Preclude Coverage**

It is ProBuilders' burden to establish, by undisputed evidence, what portion of the underlying judgment, if any, is subject to an exclusion. *Prichard v. Liberty Mutual Ins. Co.*, 84 Cal.App.4th 890, 910 (2000). Absent such evidence, the Levines are entitled to coverage for the entire judgment, once they demonstrate Haas was liable for damages because of property damage (physical injury to tangible property) caused by an occurrence during the policy period.

ProBuilders' arguments regarding Exclusions "L", "M", and "N" are not supported by any evidence and are instead nothing more than conditional arguments that "if" the Court finds any part of the judgment is for work within the scope of an exclusion, there is no coverage for that part of the judgment. It is ProBuilders' burden to provide supporting evidence to its "Exclusion" arguments in its moving papers as the immediate opposition is Defendants only opportunity to address and rebut the same. ProBuilders' unsupported arguments do not come close to eliminating "genuine issues for trial" as to these exclusions.

**a. Exclusions J(5) and J(6) Do Not Preclude Coverage**

Exclusions J(5) and J(6) do not apply to exclude coverage for the $295,115.45 for "Damage to Other Work Caused by the Defective Work." As ProBuilders asserts in its own motion at P. 19, line 18-19 "all damage that took place prior to the time Haas Corp. stopped work would be precluded by Exclusions "J(5)" and "J(6)". In other words, ProBuilders ostensibly admits that all such damage that took place after the time Haas Corp. stopped work would be covered. The testimony of the Levines' expert, Pat Kelley, indicates that damage did take place after Haas Corp. stopped work. Mr. Kelley testified at deposition that he had visited the Levine job both before and after Haas stopped work. He also testified that after Haas stopped work, he noticed new damage to the home and that he believed that the framing work was still causing damage to this day. In light of this testimony indicating that damage

took place after the time Haas Corp. stopped work, ProBuilders cannot argue that there is no triable issue of fact as to whether J(5) and J(6) precludes coverage for the $295,115.45 for "Damage to Other Work Caused by the Defective Work." (Lai Decl. ¶3, Exh. P, Kelley Depo. at 81:3-16, 84:2-4, 87:12-89:18)

**b. Exclusions "L", "M", and "N" Do Not Preclude Coverage**

ProBuilders argues that if "the Court holds, contrary to Haas' testimony, that some of the work was performed by Haas Corp. employees, Exclusion "L" would preclude coverage for all "completed operations" damages arising from the work of those employees." The exclusion is not so broad; it does not bar coverage for damage, caused by Haas' work, to the work of subcontractors. *Calfarm Ins. Co. v. Krusiewicz*, 131 Cal.App.4th 273, 288 (2005) ("own work exclusion does not bar coverage "for damages to the work product of others"). Exclusion "L" "does **not** apply if the damaged work or the work out of which the damage arises was **performed on your behalf by a subcontractor**." (Emphasis Added)

The *Calfarm* case, and the wording of Exclusion "L" demonstrate that damage to the work of subcontractors, caused by the insured, is covered. ProBuilders did not offer any evidence that the damage did not include damage to the work of subcontractors and has not met its burden of demonstrating that coverage is excluded under Exclusion "L".

Exclusion "M" does not preclude coverage. This exclusion bars coverage for property that has not been physically injured. *Watts Industries, Inc. v. Zurich American Ins. Co.*, 121 Cal.App.4th 1029, 1047 (2004). While ProBuilders cites to no evidence in its argument that Exclusion "M" bars coverage, the Levines have established physical injury to tangible property at trial, and specified those damages, in the amount of $295,115.45, separate and apart from damages for the cost of correcting substandard work and completing work.

Exclusion "N" only bars coverage for expenses incurred to repair or replace defective products, but it does not bar coverage for damages because of physical injury to tangible property. *Centillium Communications, Inc. v. Atlantic Mutual Ins. Co.*, 528 F.Supp.2d 940, 950 (N.D. Cal. 2007). Damages caused by physical injury to tangible property, including the $295,115.45 for damage to other work caused by defective work AND the cost of vacating the house to correct those damages, $150,451.19, are covered under the ProBuilders' policy, notwithstanding Exclusion N. Exclusion "N" does not preclude coverage because it only applies to damages incurred for "loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of "your product", "your work" or "impaired property." However, the Levines' home was not withdrawn from the market or from use. There is no evidence this exclusion applies, in any way, to the $295,115.45 for "Damage to Other Work Caused by the Defective Work."

#### 4. Contractor's Special Conditions (CSC) Endorsement Does Not Preclude All Claims

Contrary to ProBuilders' overly broad assertion, any alleged non-compliance with the CSC Endorsement does not completely bar coverage for all of the claims asserted by the Levines in the Underlying Action. The CSC endorsement states that an insured must receive from any of its independent contractors: (1) a written indemnity agreement and (2) a certificate of insurance evidencing coverage not less than coverage provided in the Policy as a condition precedent to the Policy applying to any **claim**. The Levines' complaint in the underlying action asserts several claims, for property damage caused by several defects, some based upon the work performed by Haas Corp. and some based upon the work performed by independent contractors. The condition precedent in the CSC endorsement does not bar coverage for those claims that are not based, at least in part, on the work performed by independent contractors.

In *Buss v. Superior Court*, 16 Cal.4th 35, 46-47 (1997), the California Supreme Court recognized that a suit may include several "claims" and the insurer's coverage obligations are determined with respect to each of those individual claims. ("(I)n an action wherein all the claims are at least potentially covered, the insurer as a duty to defend . . .Conversely, in an action wherein none of the claims is even potentially covered, the insurer does not have a duty to defend . . .It follows that, in a "mixed" action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend as to claims that are at least potentially covered.") ProBuilders argues that the Levines' entire complaint constitutes a "claim" but this is contrary to the California law and specifically the court's holding in *Buss*.

ProBuilders' overly broad reading of the term "claim" also illustrates why its reliance on *Northern American Capacity Ins. Co. v. Claremont Liability Ins. Co.*, 177 Cal.App.4th 272 (2011) is inapposite here. While the CSC endorsement in that case may be similar to the CSC endorsement here, ProBuilders omits the fact that, in *North American Capacity*, *Claremont* actually provided coverage for its equitable share of the settlement allocated to claims seeking damages caused by the work of its insured, the general contractor. Here, ProBuilders has denied coverage for any portion of any settlement of the claims asserted. If ProBuilders' overly broad reading of the term "claim" was accurate, then there would be no reason for *Claremont* to have contributed any portion of any settlement.

### E. Defendants Can Recover the Full Amount of the Underlying Judgment

Haas and the Levines both may potentially recover for the full judgment and prevail on their respective counterclaims for bad faith.

Haas' Counterclaim includes three causes of action: (1) breach of contract/duty to defend against ProBuilders, (2) breach of contract/duty to indemnify against ProBuilders, and (3) bad faith against ProBuilders. The Levines' Counterclaim asserts a single cause of action for bad faith. As to the first two causes of action in Haas' Counterclaim, there is, at the least, a triable issue of fact as to whether any portion of the underlying judgment is covered under the ProBuilders' policy and as such, a potential that Haas will prevail. Similarly, there is ample evidence that supports both Haas and the Levines' causes of action for bad faith.

**1. <u>ProBuilders Breached the Implied Covenant of Good Faith and Fair Dealing</u>**

An implied covenant of good faith and faith dealing is implicit in every insurance contract. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Foley v. Interactive Data Corp.* 47 Cal.3d 654, 683 (1988) (citing Rest.2d of Contracts §205); *PPG Industries, Inc. v. Transamerica Ins. Co*., 20 Cal.4th 310 (1999). Breach of the implied covenant gives provides the basis for an action in tort. *Foley, supra*, 47 Cal.3d at 684.

Under the implied covenant of good faith and fair dealing, insurance companies have a duty to settle third-party liability claims within policy limits in those situations where there is a substantial likelihood in recovery in excess of the limits. *See, e.g., Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 97 Cal.Rptr.2d 151, 2 P.3d 1 (2000).

In cases where there is a substantial risk of exposure to the insured in excess of the policy limits, an inherent conflict of interest arises between the insurance company and its insured. Because of this conflict of interest, insurance companies have a duty to give equal consideration to the interests of the insured when evaluating settlement offers within policy limits. *See, e.g., Merritt v. Reserve Ins. Co*., 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 520 (1973).

Significantly, under the equality of consideration rule, **insurers must treat settlement offers within policy limits as though the insurer alone was required to pay the entire risk of loss**. "Thus, the ***<u>only</u>*** permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Johansen v. California State Auto. Assn. Inter-Ins. Bureau*, 15 Cal. 3d 9, 16 (1985) (Emphasis added)

During the Underlying Action, there were no less than three settlement offers made by Plaintiffs that were within policy limits;

- On or about January 2008, the Levines made a settlement demand of approximately $300,000. ProBuilders did not authorize settlement or attempt to negotiate settlement in light of this offer.

- On May 22, 2009, the Levines made a settlement offer of $860,224.89, which was conveyed to ProBuilders by Haas' counsel Jon Heck in an e-mail dated June 2, 2009. Mr. Heck recommended that ProBuilders attempt settle the matter, stating that the Levines' were likely to recover nearly all of their claimed damages. ProBuilders would not even authorize Mr. Heck to engage in settlement negotiations.
- On or about February 9, 2010, the Levines offered to settle the case for $985,000. Again, Mr. Heck conveyed this offer to ProBuilders with a recommendation that he be given authority to engage in settlement negotiations given the likelihood of a favorable judgment for the Levines. On February 19, 2010, ProBuilders again refused to consider any settlement, asserting that no coverage existed under the policy.

Under California law ProBuilders' ***only*** consideration in evaluating these settlement offers should have been whether the ultimate judgment was likely to exceed the amount of the settlement offer. It is and will be defendants position that ProBuilders completely failed and ignored this fundamental obligation imposed by California law on every insurance carrier doing business within this state. *Johansen, supra,* 15 Cal. 3d at 16.

In the event that coverage is found to apply to any portion of the judgment, ProBuilders will be liable for bad faith damages that "will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." *Johansen, supra,* 15 Cal. 3d at 15. "An insurer's "good faith," though erroneous, belief in non coverage affords no defense to liability flowing from the insurer's refusal to accept a reasonable settlement offer." *Id.* at 16.

**2. Under Recent 9th Circuit Decision, Insurers Have Duty to Effectuate Settlement Where Liability Is Reasonably Clear**

Recently, in *Yan Fang Du v. Allstate Ins. Co*., 681 F.3d 1118 (9th Cir. 2012), the 9th Circuit extended an insurer's duty to effectuate settlement beyond the duty set forth in *Johansen*, holding that insurers had a duty to effectuate settlement where liability had become reasonably clear even in the absence of a settlement demand. In *Yan Fang Du*, the Court recognized that in situations where there is a significant risk of a judgment in excess of policy limits and there is a reasonable opportunity to settle within those limits, the insurer is required to initiate settlement.

As support for its holding, the Court noted that the broader duty to settle is supported by Insurance Code §790.03(h) which enumerates the obligations insurers owed to their insureds. The statute identifies as unfair claims settlement practice an insurer's "not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." *See* Ins. C. § 790.03(h)(5).

Previously, the Court in *Pray ex. rel Pray v. Foremost Ins. Co.*, 767 F.2d 1329, 1330 (9th Cir. 1985) observed that it was reasonably clear that California courts would interpret the California statute as imposing upon insurance companies a duty to actively investigate and attempt to settle claims by making, and by accepting, reasonable settlement offers once liability had become reasonably clear. The Court also noted that the Judicial Council of California Civil Jury Instructions added CACI 2337 (2008), which tracks section 790.03(h). The instruction did not require that a bad faith claim be predicated on an insurer's rejection of a claimant's demand.

*Johansen* demonstrates the clear obligation of every insurer to only evaluate the reasonableness of a settlement offer in light of whether the ultimate judgment is likely to exceed the amount of the settlement offer. In *Yan Fang Du*, the 9th Circuit broadened this obligation to require an insurer to initiate settlement in the absence of a settlement offer. ProBuilders did not satisfy (nor even consider) this obligation and if coverage is found to apply to any portion of the judgment, Haas will prevail on his cause of action for bad faith as alleged in his Counterclaim.

### 3. <u>The Levines Will Be Entitled to Recover Bad Faith Damages Under California Insurance Code 11580</u>

For the same reasons set forth above, the Levines are likely to prevail on their bad faith cause of action as well. As third-party judgment creditors, however, the Levines' bad faith action against ProBuilders is asserted under Insurance Code §11580(b)(2), which provides that "**whenever judgment is secured against the insured … in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment**."

Under §11580(b)(2), the Levines are able to recover for bad faith damages arising from ProBuilders' failure to pay the judgment in the Underlying Action. *Hand v. Farmers Ins. Exch*., 23 Cal.App.4th 1847 (1994). In *Hand*, the court held that the implied covenant of good faith and fair dealing imposes a duty not to withhold in bad faith the payment of damages that the insured has become obligated by judgment to pay. The cause of action for bad-faith nonpayment of a finally adjudicated claim sounds in tort as well as in contract, and a third-party creditor plaintiff suing an insurer is permitted to seek tort damages and punitive damages.

If the Levines are successful in establishing ProBuilders' liability at trial, they will be entitled to recover the portion of the judgment pertaining to attorney's fees under the "Supplemental Payments" provision of the Policy, which provides that the Policy shall pay "costs awarded against you in a suit for damages but only if awarded on a cause of action covered but this insurance", "prejudgment interest

awarded against you on the part of the judgment we pay", and "all interest on the full amount of any judgment that accrues after entry of judgment."

## IV. CONCLUSION

This matter has been an unconscionable nightmare for the Levines. Because of this litigation they have lost their home.

ProBuilders' attempt to rescind the policy at issue is barred by the doctrine of laches. At the barest of minimums, long standing California case law is unequivocal that where the question of laches is raised in defense to an insurer's attempt to rescind a policy, a factual determination of the same must be made by the trier of fact.

The factual findings determined by the trial court in the underlying action are binding on ProBuilders. There is clearly coverage under the policy at issue for damage caused by Haas' employees to the work of others. As much of that damage continues to this day, and Plaintiff has no evidence of any kind to challenge the testimony of expert Pat Kelley, none of the exclusions cited by Plaintiff in its brief are applicable to preclude coverage.

Finally, once liability became reasonably clear and the ultimate judgment was clearly going to exceed the settlement offer, under California law ProBuilders had a duty to attempt in good faith effectuate a settlement in this matter. ProBuilders breached that duty repeatedly to the detriment of the Haas Defendants as well as the Levines.

For the reasons set forth above, Defendants respectfully submit that Plaintiff's motion be denied in its entirety.

Dated: October 12, 2012

SILICON VALLEY LAW GROUP

By: ______________________

Kim O. Dincel
Julie Bonnel-Rogers
Christopher Lai
Attorneys for Defendants