GEORGE D. YARON, ESQ. (State Bar #96246)
JAMES I. SILVERSTEIN, ESQ. (State Bar #143543)
YARON & ASSOCIATES
601 California Street, 21st Floor
San Francisco, California 94108
Telephone: (415) 658-2929
Facsimile: (415) 658-2930

Attorneys for Plaintiff
PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG, a District of Columbia, Risk Retention Group,<br><br>Plaintiff,<br><br>v.<br><br>VALLEY CORP. B., a California Corporation formerly known as R.J. HAAS CORP.; RONALD J. HAAS, an individual; TY LEVINE, an individual; and KAREN LEVINE, an individual,<br><br>Defendants. | CASE NO. 5:10-cv-05533-EJD<br><br>**PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG'S REPLY IN SUPPORT OF ITS MOTION FOR (1) SUMMARY JUDGMENT ON THE LEVINES' COUNTERCLAIM AND R.J. HAAS' COUNTERCLAIM, OR, IN THE ALTERNATIVE, A MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) PARTIAL SUMMARY JUDGMENT ON PROBUILDERS' SECOND AMENDED COMPLAINT**<br><br>Date: November 2, 2012<br>Time: 9:00 a.m.<br>Judge: Edward J. Davila<br>Courtroom: 1 |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The Policy Should Be Rescinded ..... 2

B. The Doctrine of Laches Does Not Bar The Rescission of the Policy ..... 3

1. The Instant Rescission Action Was Timely Filed ..... 3

2. Defendants Were Not Substantially Prejudiced ..... 5

C. The *Levine* Action Judgment is Not Covered by The Policy ..... 7

1. The CSC Endorsement Precludes All Coverage ..... 8

D. If The Court Holds That The CSC Endorsement Does Not Preclude All Coverage, Then The "Work Product" Exclusions Would Preclude Coverage For The Judgment, Even if The Framer was An Employee ..... 10

E. Objections to Defendants' Evidence ..... 11

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## STATES CASES

*Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal.App.4th 96 (2003) . . . . . . . . . . 10

*Barrera v. State Farm Mut. Auto. Ins. Comp.*, 71 Cal.2d 659 (1969) . . . . . . . . . . 7

*Buss v. Superior Court,* 16 Cal.4th 46 (1997) . . . . . . . . . . 8

*F&H Const. v. ITT Hartford Ins. Comp. of the Midwest,* 118 Cal. App.4th 364 (2004) . . . . . . . . 1

*Imp. Cas. and Indem. Comp. v. Sogomonian,* 198 Cal.App. 3d 169 (1988) . . . . . . . . . . 2

*J.C. Penney Cas. Ins. Comp. v. M.K.*, 52 Cal.3d 1009 (1991) . . . . . . . . . . 9

*Maryland Cas. v. Reeder,* 221 Cal.App.3d 961(1990) . . . . . . . . . . 7

*Montrose Chem. Corp. of Calif. v. Sup. Ct.*, 6 Cal.4th 287 (1993) . . . . . . . . . . 5

*Wright v. Fireman's Fund Ins. Comp.*, 11 Cal. App.4th 998 (1992) . . . . . . . . . . 1

## FEDERAL CASES

*Admiral Ins. Comp. v. Debber, et al.*, 442 F.Supp.2d 958 (E.D. Cal. 2006) . . . . . . . . . . 3

*Allstate Ins. Comp. v. Harris,* 445 F. Supp.847 (N.D. Cal. 1978) . . . . . . . . . . 9

*Fed. Ins. Co. v. Curon Medical, Inc.*, 2004 U.S. Dist. LEXIS 22365 (N.D. Cal. 2004) . . . . . . . . 2

*N. H. Ins. Co. v. Viera,* 930 F.2d 696 (9th Cir. 1991) . . . . . . . . . . 1

*State Farm Fire & Cas. v. McDevitt,* 2001 U.S. Dist. Lexis 7529, (N.D. Cal. 2001) . . . . . . . . . . 4

## STATUTES

California Civil Code §1693 . . . . . . . . . . 3, 4

Insurance Code § 359 . . . . . . . . . . 2

Insurance Code § 650 . . . . . . . . . . 2

Vehicle Code §16000. . . . . . . . . . . 7

# I. INTRODUCTION

Defendants' Opposition raises no credible argument which would justify the denial of the instant Motion, and contains lengthy discussions regarding issues that are not germane to the matter. These issues include (1) the defense provided by ProBuilders Specialty Insurance Company, RRG ("PBSIC"), in the case captioned *Ty Levine, et al. v. R.J. Haas, et al.* Santa Clara County Superior Court, Case No. 07-CV081016 ("*Levine* action"), to R.J. Haas ("Haas") and R.J. Haas Corp. ("Haas Corp."), (2) the *Levine* action settlement negotiations, (3) a proposed stipulated judgment in the *Levine* action, and (4) Defendants' assertions concerning PBSIC breaching the implied covenant of good faith and fair dealing. In a nutshell, PBSIC's Motion solely concerns (1) the rescission of the policy, and (2) coverage for the judgment in the *Levine* action. Defendants apparently insert these irrelevant arguments to persuade the Court that the complexity of the issues inevitably lead to factual disputes which warrant the denial of PBSIC's Motion.

However, PBSIC's Motion is simple: First, Haas Corp. made material misrepresentations, in the application for the subject policy, that justify the rescission of the policy. As discussed below, PBSIC filed the rescission action at the earliest time it could without prejudicing the rights of Haas Corp. and Haas. Second, the *Levine* action judgment is not covered by PBSIC policy no. COM 5010992, which was effective from August 29, 2006 to August 29, 2007 ("policy"). Defendants ignore fundamental tenants of insurance law such as (1) " . . . a liability insurance policy is not designed to serve as a performance bond" (*F&H Const. v. ITT Hartford Ins. Comp. of the Midwest*, 118 Cal. App.4th 364, 373 (2004)), and (2) the costs incurred to repair and replace defective work, including damages to other property caused by the repair, also do not constitute "property damage" (*N. H. Ins. Co. v. Viera*, 930 F.2d 696, 701-701 (9th Cir. 1991)). Moreover, the Levines overlook the fact that in an Insurance Code section 11580 action, the judgment creditor must, among other things, plead and prove the policy covers the relief awarded in the judgment. (See *Wright v. Fireman's Fund Ins. Comp.*, 11 Cal. App.4th 998, 1015 (1992).) The Levines have not plead or proved that the subject policy covers the judgment. This Court should rescind the policy and hold (1) PBSIC has no duty to indemnify Haas Corp. and Haas against the *Levine* action judgment, and (2) Defendants cannot prevail on their Counterclaims against PBSIC. In the

alternative, if the Court is not inclined to rescind the policy, then PBSIC requests that the Court Order (1) that the policy does not cover the *Levine* action judgment, and Haas is not entitled to recover on his breach of contract/ duty to indemnify claim, or (2) as to what portion of the *Levine* action judgment is not covered by the policy.

## II. ARGUMENT

### A. The Policy Should Be Rescinded

This Court should rescind the policy, because of material misrepresentations in the policy application. In part, the application asked:

> 17. Are subcontractors allowed to work without providing applicant with a certificate of insurance?
>
> * * *
>
> 20. Does or will applicant have a written contact with its subcontractors that includes a hold harmless agreement relative to work performed by the subcontractors?
>
> 21. Is applicant named as an additional insured on its subcontractors' insurance policies?
>
> * * *
>
> 23. Does applicant carry workers' compensation insurance policies [PBSIC's Appendix of Exhibits ("App.") at no 22.]

*Imp. Cas. and Indem. Comp. v. Sogomonian*, 198 Cal.App. 3d 169, 182 (1988), discussed rescission and stated "[s]uch right was exercised in a timely manner, (Ins. Code Section 650) and the rescission is from 'the time the representation becomes false' (Ins. Code, Section 359) and, of necessity, <u>will void liability even on pending claims</u>." (Emphasis added.) (See also *Federal Insurance Company v. Curon Medical, Inc.*, 2004 U.S. Dist. LEXIS 22365 (N.D. Cal. 2004), granting rescission while there was a pending lawsuit against the insured.)

As explained in PBSIC's moving papers, Haas Corp. made material misrepresentations, in the policy application, it represented that it (1) did not allow any of its subcontractors to work without providing Haas Corp. with a certificate of insurance; (2) did, and would, have a written contract with its subcontractors that included a "hold harmless" agreement for work performed by its subcontractors; (3) was named as an additional insured on its subcontractors' insurance policies; and (4) carried workers' compensation insurance for all of its employees.

Defendants do not dispute that Haas Corp. (1) did not obtain certificates of insurance from almost all the subcontractors that worked on the Levine residence, (2) did not obtain a single written hold harmless agreement from any subcontractor that worked on the Levine residence, (3) was not named as an additional insured on all of the subcontractors' insurance policies that worked on the Levine residence, and (4) had no workers' compensation policy in effect at the time that it applied for the policy. Instead, the Defendants try to dispose of the rescission issue by contending that the application questions were ambiguous.

Haas contends that the pertinent application questions only applied to future jobs. According to Haas, since at the time he signed the application, Haas Corp. was working on the Levine residence, Haas Corp.'s actions on the Levine residence were not relevant. There is absolutely no indication that they questions only concern future jobs. The policy application was signed by Haas on August 20, 2006. All four questions concern the present time (August 20, 2006), except with respect to the question concerning written hold harmless agreements, which inquires as to the present time <u>and</u> in the future. Mr. Haas' alleged interpretation of the policy application makes no sense. Why would an insurer, which is considering insuring a contractor, solely inquire as to future actions of an applicant, when, if that insurer issued a policy, the policy would provide coverage for ongoing projects?

### B. <u>The Doctrine of Laches Does Not Bar The Rescission of the Policy</u>

#### 1. <u>The Instant Rescission Action Was Timely Filed</u>

Defendants contend that laches precludes the Court from rescinding the policy. Under the circumstances, PBSIC filed the rescission action at the appropriate time. Moreover, the Defendants were not substantially prejudiced by any alleged delay in filing the rescission action. Cal. Civil Code Section 1693 provides "[w]hen relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party". *Admiral Ins. Comp. v. Debber, et al.*, 442 F.Supp.2d 958 (E.D. Cal. 2006), stated:

> To prevail on a defense of laches, the defendant must also demonstrate substantial prejudice resulting from the delay. (Citation omitted.) ("If the delay has caused no material change in status quo, ante, i.e., no detriment suffered by the party pleading

> the laches, his plea is in vain.") (internal quotations omitted.) The existence of prejudice to the defendant under California Civil Code section 1693 depends on the specific facts of the case. (Citations omitted.) The burden of affirmatively demonstrating substantial prejudice lies with the party asserting laches". (Citation omitted.)
>
> "Generally speaking, the existence of laches is a question of fact to be determined solely by the trial court in light of all of the applicable circumstances. . . ." Id. However, where, as here, the issues of fact are undisputed, the court may appropriately decide the issue on summary judgment. (Citation omitted.)
>
> * * *
>
> An insurer is entitled to a reasonable time period to investigate and act upon information regarding its right to rescind a policy. (*Id.* at 970, emphasis added, see also *State Farm Fire & Cas. v. McDevitt,* 2001 U.S. Dist. Lexis 7529, *25 (N.D. Cal. 2001), wherein the Court stated "the circumstances in each particular case govern whether delay in asserting a right gives rise to a defense of laches".)

Defendants contend that PBSIC, during the time that it defended the *Levine* action, acquired information regarding Haas Corp.'s failure to obtain certificates of insurance, additional insured endorsements, and written hold harmless agreements, such that PBSIC should have filed the instant rescission action earlier.[1] PBSIC's position is that the circumstances surrounding the defense required PBSIC to file the instant rescission action after the trial of the *Levine* action. If PBSIC had filed a rescission action, during the pendency of the *Levine* action, then, among other things, Haas, and Haas Corp. would have had to simultaneously incur the expense of defending themselves against the *Levine* action and a rescission action. Under Defendants' scenario, PBSIC would have withdrawn from defending Haas and Haas Corp. against the *Levine* action, and filed a rescission action. Forcing PBSIC's insureds to fight a "two-front" battle, the *Levine* action and the rescission action, would have dwindled Mr. Haas' alleged limited resources even further. Moreover, a "two-front" battle may have impaired the insureds' ability to adequately defend themselves against the *Levine* action.

Moreover, filing a rescission action during the pendency of the *Levine* action would have prejudiced Haas and Haas Corp., because it would have provided the Levines with impeachment material since the grounds for the rescission are misrepresentations made by

---

[1] Defendants make no mention of the workers' compensation issue.

Haas in his policy application. The Levines' counsel would have learned of PBSIC's basis for its rescission action by merely reviewing the operative Complaint. This fact alone mandated that PBSIC file the rescission action after the trial of the *Levine* action.

Furthermore, if PBSIC had filed a declaratory relief/rescission action while the *Levine* action was pending, a court would have inevitably stayed that action. (See *Montrose Chem. Corp. of Calif. v. Sup. Ct.*, 6 Cal.4th 287, 302 (1993), holding a declaratory relief action can be stayed pending resolution of the underlying action when the coverage question turns on facts to be litigated there.) The basis for the stay would have been the overlapping issues in the coverage action and the *Levine* action. The overlap would include issues regarding whether the work performed on the Levine residence was performed by Haas Corp.'s subcontractors or employees. In the instant action, whether Haas Corp. had any employees working on the Levine residence impacts the application of the Contractors Specialty Conditions Endorsement ("CSC Endorsement"), because this Endorsement, as discussed below, places certain requirements on Haas Corp.'s independent contractors that must be satisfied before PBSIC will provide coverage. Moreover, whether Haas had any employees working for him on the Levine residence impacts the application of Exclusion "L" which applies to Haas Corp.'s employees. Given these issues impacting a rescission action, under the circumstances, the only reasonable course of action was for PBSIC to file the instant action after the trial of the *Levine* action.

**2. Defendants Were Not Substantially Prejudiced**

Defendants have no evidence that they were substantially prejudiced by PBSIC's alleged delay in filing the instant action. The Opposition alleges "[d]uring the underlying action, the Haas defendants and the Levines were led to believe that coverage would apply to whatever judgment was rendered by the court". (Opposition at p.14:15-17.) In fact, Defendants' evidence establishes that this statement is incorrect. Exhibit A, attached to the Declaration of Paul Minoletti ("Minoletti Dec."), is a "reservation of rights" letter, dated March 7, 2008, to Haas. In the 22-page letter, PBSIC detailed its "reservation of rights" as to various provisions, including the CSC Endorsement. At page 21, the letter stated ". . . PBSIC is not waiving, but it is preserving all of its rights to contend that it is not obligated to defend R.J. Haas, to contend that it is not obligated

to indemnify R.J. Haas, to recover any monies spent in settlement or satisfaction of judgments, and to file a declaratory relief action to secure resolution of any coverage issues".

Exhibit C to the Minoletti Dec. is a "reservation of rights" letter, dated October 5, 2009, addressed to Haas. The letter stated, on page 2, "ProBuilders reserves the right to file a Declaratory Relief Action regarding its coverage obligations here. ProBuilders also reserves the right to withdraw from the defense entirely at any time." On page 2, the letter stated "[b]ased on the file materials you have provided, R.J. Haas did not enter into any written subcontracts with these subcontractors containing written indemnity agreements in favor of R.J. Haas". On page 4, the letter stated "[t]herefore, based on the terms of the CSC Endorsement, it appears that R.J. Haas did not satisfy the 'condition precedent' to the ProBuilders policy being applicable to the claim, so the ProBuilders policy is inapplicable to the instant action against R.J. Haas".

Exhibit D attached to the Minoletti Dec. is a "reservation of rights" letter, dated February 19, 2010, wherein Haas was, once again, advised that he had failed to satisfy the provisions of the CSC Endorsement. The letter discussed Haas Corp.'s failure to obtain hold harmless agreements from its subcontractors and Mr. Haas' representation, in his application, that he would obtain written hold harmless agreements from his subcontractors. Moreover, on page 2, the letter stated "since it appears undisputed that there is no potential for coverage here, ProBuilders has no coverage obligations here."

Thus, it is undisputed that Haas was aware, long before the instant action was filed, that PBSIC (1) believed Haas was not entitled to any indemnity coverage, and (2) reserved all of its rights under the policy. Defendants contend that Haas was prejudiced, because "[i]f he had known of the possibility that coverage would be rescinded, his litigation/settlement strategy would have been significantly different, and he would have limited his personal liability". (Opposition at p.14:22-24.) Defendants provide no evidence or explanation to support this contention. Since Haas knew, during the pendency of the *Levine* action, that PBSIC contended there was no indemnity coverage, this unsupported assertion of prejudice lacks any merit.

In the Declaration of Ty Levine (Docket no. 133), he stated, "had we understood that coverage would not apply, we would have handled the underlying case, settlement negotiations and

offers to compromise in a dramatically different manner". (Declaration of Levine at p.3:3-5.) This statement falls short of the requirement that the Levines affirmatively show substantial prejudice. Given PBSIC's determination that there was no coverage available for the *Levine* action, as well as the wealth of case law that holds that, as a general rule, CGL polices do not cover faulty construction, one struggles to understand the Levines' claims of prejudice. PBSIC should not have voluntarily advised the Levines of the basis of the possible rescission during the pendency of the *Levine* action, because disclosing Haas' misrepresentations could have impaired Haas' defense. The Levines could have used that information to impeach Haas at trial. The Levines, through discovery, in the *Levine* action, could have found out about the coverage issues. Defendants have failed to establish that they were substantially prejudiced by the filing of the instant rescission action.

Defendants also rely on *Barrera v. State Farm Mut. Auto. Ins. Comp.*, 71 Cal.2d 659 (1969), for the proposition that public policy bars the rescission of the policy. However, this unique automobile liability insurance policy decision is inapplicable to the instant matter. The *Barrera* Court was concerned about the presence of financially irresponsible drivers on the highway. The *Barrera* Court held, citing to California's automobile financial liability law (Vehicle Code section 16000 et seq.), that an auto insurer must ". . . act promptly to determine the insurability after issuance of an automobile liability insurance . . . ." (*Id.* at 685.) "The duty arises from the public policy that protects the innocent victim of the careless use of automobiles from an inability to sue a financially responsible defendant". (*Id.*)

### C. <u>The *Levine* Action Judgment is Not Covered by The Policy</u>

If the Court declines to rescind the policy, there is still no coverage for the *Levine* action judgment, because CGL policies do not provide coverage for defective or unfinished work. In *Maryland Cas. v. Reeder*, 221 Cal.App.3d 961, 967 (1990), the Court stated:

> The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. (Citations omitted.) Rather liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products. (*Id.* at 967.)

The evidence cited in PBSIC's moving papers, including the *Levine* action Statement of Decision, establish that the damages awarded to the Levines were entirely for Haas Corp's defective or incomplete work. No damages were awarded to the Levines for Haas Corp. causing damage to the work of anyone other then R.J. Haas Corp. and its subcontractors.

**1. The CSC Endorsement Precludes All Coverage**

The CSC Endorsement, in part, provides:

> As a condition precedent to this policy applying to any **claim**[2] in whole or in part based upon the work performed by independent contractors, the **insured** must have prior to the date of the loss giving rise to the **claim**:
>
> (1) Receive a written indemnity agreement from the independent contractor holding the **insured** harmless for all liabilities, including costs of defense, arising from the work of the independent contractors; and
>
> (2) Obtained certificates of insurance from the independent contractor indicating that the **insured** is named as an additional insured and that coverage is maintained equal to or greater than provided by this policy with limits of at least $1,000,000 per **occurrence**. [App. no. 21 [the policy at endorsement no. 5].]

Given the undisputed evidence that Haas Corp.'s subcontractors did not comply with the CSC Endorsement, including the fact that Haas Corp. did not obtain a written hold harmless agreement from any subcontractor that worked on the Levine residence, one is left with the inevitable conclusion that the CSC Endorsement precludes all coverage for the *Levine* action judgment. The CSC Endorsement applies to preclude all coverage for any claim that, in whole or in part, is based upon work of independent contractors. As discussed in the moving papers, Haas Corp. was a "paper contractor", which meant he contracted out all work on the Levine residence to subcontractors. Thus, there is no coverage under the PBSIC policy. Defendants appear to concede this point, except with respect to the framer.

---

[2] The policy defines a "claim" to include a demand for money because of "property damage". [App. no. 21 at PBG 0001 at p. 21.] Defendants' citation to *Buss v. Superior Court*, 16 Cal.4th 46 (1997) for the meaning of "claim" is misplaced, since the policy defines a "claim".

Defendants contend that PBSIC is bound by the Trial Court's finding that the framer was an employee of Haas.[3] However, if PBSIC is collaterally estopped from litigating this issue, then it would be unable to fully litigate the coverage issues. *J.C. Penney Cas. Ins. Comp. v. M.K.*, 52 Cal.3d 1009 (1991), dealt with a coverage action wherein the trial court held that the insurer, in the coverage action, was collaterally estopped from denying coverage, because in the underlying molestation lawsuit the court ruled that the insured acted negligently, not intentionally, with respect to the claims alleged by the mother of a molestation victim. The California Supreme Court held that the insurer was not collaterally estopped by the underlying judgment from asserting that the conduct at-issue was intentional rather than negligent, because the insurer adequately reserved its rights. (See *J.C. Penney* at 1016-1017.) The Court stated:

> "In any event, if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment. If the injured party prevails, that party or the insured will assert his claim against the insurer. [footnote omitted.] At this time the insurer can raise the noncoverge defense previously reserved." (Citation omitted, *Id.* at 1017.)

Also, *Allstate Ins. Comp. v. Harris*, 445 F. Supp.847, 852-853 (N.D. Cal. 1978) stated:

> On the other hand, it is unlikely that a jury verdict awarding damages in state court would include a determination of mere negligence rather than intentional tort. And even if it did, the applicable California principles of collateral estoppel are clear that Allstate would not be bound thereby in this action. Pursuant to its reservation of rights, Allstate may assert and seek to prove that Sterling Joseph's actions were intentional for purposes of coverage, notwithstanding a clear finding to the contrary in the tort action.

Similarly, the Court should not apply collateral estoppel to preclude PBSIC from litigating whether the framer was an employee or subcontractor. PBSIC reserved all of its rights under the policy. In particular, PBSIC reserved its rights as to the application of the CSC Endorsement. The application of the CSC Endorsement, in part, depends upon whether a worker on the Levine residence was a Haas Corp. employee or was a Haas Corp. independent contractor, because the CSC Endorsement applies to independent contractors. In its moving papers, PBSIC provided evidence that Haas had no employees work on the Levine residence.

---

[3] Defendants filed "Defendants Evidentiary Objection to Plaintiffs' Introduction of Evidence Barred by Collateral Estoppel" in violation of Local Rule 7-3(a). This pleading should be stricken.

If the Court holds that PBSIC is collaterally estopped from litigating whether the framer was a Haas Corp. subcontractor or employee, the CSC Endorsement would still preclude all coverage because it provides that, as a condition precedent to the policy applying to any claim in whole or in part based upon the work performed by independent contractors, there must be compliance with the Endorsement. Page 10 of PBSIC's previously filed Memorandum of Points and Authorities cites to Patrick Kelley's deposition testimony concerning problems with the Levine residence. The problems included problems with the stucco, windows, sheet metal, etc. Since all work was performed by independent contractors, other than possibly the framer, the CSC Endorsement would still preclude all coverage.

**D. If The Court Holds That The CSC Endorsement Does Not Preclude All Coverage, Then The "Work Product" Exclusions Would Preclude Coverage For The Judgment, Even if The Framer was An Employee**

As explained in PBSIC's moving papers, all damages are either "completed operations" or "ongoing operations" damages. To the extent that the CSC Endorsement applies, all damages would be excluded irrespective of whether they are "completed operations" or "ongoing operations" damages. All damage that took place prior to the time Haas Corp. stopped working on the Levine residence would be precluded by Exclusions "J(5)" and "J(6)", since Haas Corp. was the general contractor retained to build the entire residence. (See *Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal.App.4th 96, 103,104 (2003).) The Defendants have not identified any facts that the judgment includes damages for "completed-operations" damages to any work performed by a subcontractor directly retained by the Levines. [Deposition of Patrick Kelley ("Dep. K") at p. 59, 8-21at App. no. 11, wherein Mr. Kelley, the Levines sole construction expert, who testified at trial, stated "none of the work by Haas caused any damage to any of the work contracted directly by the Levines, that's correct."] Mr. Kelley also stated that the scope of repair and completion work was work that Haas Corp. originally installed and which had to be repaired or completed. [Dep. K at pp. 56:3-59:7 at App. no. 11 and Exhibit 35 attached thereto.] Defendants submitted no evidence that contradicts Mr. Kelley's statements. They merely cite to testimony by Mr. Kelley that he visited the Levine residence after Haas Corp. was terminated and he saw new damage. Defendants submit no specific facts that any work other then work performed by Haas Corp. and its

subcontractors was damaged. Defendants have provided no evidence that Haas Corp. damaged any work performed by Flegel or its subcontractors after Haas Corp. was terminated and before the policy terminated. The Defendants merely speculate about the possibility. Speculation does not justify the denial of the Motion. Exclusion "L" precludes coverage for all "completed operations" damages to the work of Haas Corp., including its subcontractors, arising out of the work of any Haas Corp. employee. If the Court holds that the CSC Endorsement does not preclude all coverage because the framer was Haas Corp.'s employee, then Exclusion "L" would preclude any remaining "completed operations" damages, which would be solely comprised of any damage to the work of Haas Corp.'s subcontractors caused by the framer.

The Statement of Decision included an award for "Damage to other work caused by Defective Work: $295,115.56". Mr. Kelley testified that he did not know where this award came from. (Dep. K at pp.63:1-65:18 at App. 11 and Exhibit 37 attached thereto.) The Levines have not satisfied their burden of establishing that this portion of the judgment was caused by an "occurrence" during the PBSIC policy period. Even if they met this burden, there would be no coverage, because, as discussed above, there is no coverage for any "ongoing operations" or "completed operations" damages. As explained in PBSIC's moving papers, given the lack of coverage, there is no coverage for (a) the damages for the Levines displacement from their home and interest, and (b) costs, including attorneys' fees. PBSIC's moving papers explained why there is no coverage for (1) damages for substandard work in the amount of $112,702.26, (2) damages for completion costs in the amount of $125,421.50, (3) $554,635 in disgorgement of payments made to Haas Corp. by the Levines for failure to obtain workers' compensation insurance, and (4) $12,500 for the contractors' bond. Given the lack of any Opposition on these portions of the award, the Court, at a minimum, should hold that the policy does not cover these elements of the award.

**E. <u>Objections to Defendants' Evidence</u>**

PBSIC objects to the Haas Declaration (Docket no. 134), including paragraph 17 which stated "I had knowledge that the letter was provided to Probuilders by my counsel". PBSIC also objects to paragraph 21 which stated "Probuilders never attempted to audit the policy". PBSIC

objects to these statements on the basis that it violates Federal Rule of Evidence ("FRE") 604 (the declarant lacks personal knowledge).

PBSIC objects to the Minoletti Dec. (Docket no. 138.) PBSIC objects to paragraph 6, paragraph 8 and Exhibit B attached thereto, paragraph 11, paragraph 23, and paragraph 38, because he lacks personal knowledge (FRE 604). PBSIC also objects to the first sentence of paragraph 8, because the statement is hearsay (FRE 801). Moreover, PBSIC objects to paragraph 18, and the second sentence in paragraph 27 of the Minoletti Dec., because the statements are hearsay (FRE 801), and Mr. Minoletti lacks personal knowledge (FRE 604). PBSIC objects to the (1) paragraph 7 of the Minoletti Dec., because he lacks personal knowledge (FRE 604), and (2) second sentence of paragraph 7 of the Minoletti Dec., because the statement is inadmissible hearsay (FRE 801). Moreover, PBSIC objects to paragraph 30 of the Minoletti's Dec., because it includes expert opinion (FRE 701). PBSIC also objects to page 84, lines 2-4 of Mr. Kelley's deposition transcript, which is attached to the Declaration of Chris Lai (Docket no. 137) as Exhibit "P", because Mr. Kelley lacks personal knowledge (FRE 604).

## III. CONCLUSION

This Court should rule there is no triable issue of material fact, and PBSIC is entitled to judgment in its favor as a matter of law on (1) Haas' Counterclaim, and (2) the Levines' Counterclaim. Moreover, this Court should grant Partial Summary Judgment on PBSIC's Second Amended Complaint against R.J. Haas, Karen Levine, and Ty Levine, (a) for rescission of the PBSIC policy, and (b) as to PBSIC's claim that the policy does not cover the judgment.

DATED: October 19, 2012

YARON & ASSOCIATES

By: ______________________
GEORGE D. YARON
JAMES I. SILVERSTEIN
Attorneys for Plaintiff
PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG

## CERTIFICATE OF SERVICE

I am over 18 years of age and not a party to the within action. I am employed in the County of San Francisco; my business address is **Yaron & Associates, 601 California Street, Suite 2100, San Francisco, California 94108.**

On **October 19, 2012** I served the within:

**PROBUILDERS SPECIALTY INSURANCE COMPANY, RRG'S REPLY IN SUPPORT OF ITS MOTION FOR (1) SUMMARY JUDGMENT ON THE LEVINES' COUNTERCLAIM AND R.J. HAAS' COUNTERCLAIM, OR, IN THE ALTERNATIVE, A MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) PARTIAL SUMMARY JUDGMENT ON PROBUILDERS' SECOND AMENDED COMPLAINT; and CERTIFICATE OF SERVICE**

on all parties in this action, as addressed below, by causing a true copy thereof to be distributed as follows:

*TO ALL PARTIES ON THE ECF SERVICE LIST*

✖ **VIA ELECTRONIC SERVICE:** I served a true copy, with all exhibits, electronically on designated recipients through PACER. Upon completion of electronic transmission of said document(s), a receipt is issued to serving party acknowledging receipt by PACER's system. Once PACER has served all designated recipients, proof of electronic service is returned to the filing party which will be maintained with the original document(s) in our office. This service complies with CCP §101.6.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on **October 19, 2012** at San Francisco, California.

Chris P. Christ

**Chris P. Christensen**
cchristensen@yaronlaw.com